**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2376-16T1[1]
     A-4260-16T1
     A-1800-17T1

RUI-RU JI,

  Plaintiff-Appellant,

v.

HANSON SHUEN LO,

  Defendant-Respondent.

_____

Submitted February 26, 2019 – Decided June 27, 2019

Before Judges Fisher and Suter.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0631-10.

Rui-Ru Ji, appellant pro se.

Hanson S. Lo, respondent pro se.

PER CURIAM

---

[1] These are back-to-back appeals consolidated for the purpose of this opinion.

In three separate appeals, plaintiff Rui-Ru Ji asks to reverse selected paragraphs from post-matrimonial orders entered by the Family Part. We dismiss appeal A-2376-16 and a portion of appeal A-4260-16 on procedural grounds. We affirm the other orders she has appealed in A-4260-16[2] and A-1800-17[3].

Plaintiff and defendant Hanson Shuen Lo were married in 1998. They have two daughters, Annie and May,[4] who were twelve and eight at the time of the divorce. Following a sixty-two day trial, the Family Part judge entered a dual judgment of divorce (DJOD) on May 31, 2013. Because we write for parties who are familiar with the procedural and factual history of their litigation, we discuss only such portions of the challenged orders as relate to these appeals.

---

[2] Plaintiff's September 27, 2017 amended notice of appeal in A-4260-16 involved the following orders: July 17, 2017, paragraphs 3, 11, 13, 19, 20, 22, 23, 24, 26, 27; August 21, 2017, paragraphs 1, 8, 24, 28, 29; and September 13, 2017, "order of dismissal."

[3] Plaintiff's December 13, 2017 notice of appeal in A-1800-17 involved the following orders: October 12, 2017 paragraphs 1 through 8; November 2, 2017, paragraphs 2 through 7; December 4, 2017, paragraphs 1 and 2.

[4] We have used fictitious names to preserve the children's privacy.

I

In A-4260-16[5] and A-1800-17[6], plaintiff appeals a number of orders, all of which are related to a requirement in the DJOD for reunification therapy in order to foster defendant's relationship with his older daughter, Annie. In the five years since the parties divorced, defendant has had two therapeutic reunification sessions with Annie—that plaintiff interfered with—despite a series of orders entered since then to enforce the DJOD's reunification requirement. The parties blame each other for the lack of any progress on this issue, and the record amply supports that blame. Along the way, a number of therapists have been appointed and then withdrew. A plenary hearing was held in October 2017, where the court found it was plaintiff who primarily thwarted reunification efforts. The findings there have substantial support in the record

---

[5] Plaintiff filed appeal A-4260-16, listing three orders in her notice of appeal. She amended it on September 27, 2017 to include three other orders, but did not list any of the prior orders. The orders that were removed are not properly before us. See R. 2:5-1(e)(3) (a notice of appeal shall "designate the judgments, decisions, action or rule, or part thereof appealed from").

[6] Plaintiff filed A-1800-17 on December 13, 2017. Her notice of appeal listed portions of three multi-part orders. Plaintiff's appeal of the October 12, 2017 order was out of time because more than forty-five days elapsed before the appeal was filed. See R. 2:4-1(a). We decline to consider her appeal of any part of that order.

A-2376-16T1

and, when reviewed in context with the other orders that plaintiff has appealed, show there was no abuse of discretion by the judges who entered those orders.

Annie was twelve when the parties divorced; she now is eighteen. Defendant's regular parenting time with her was suspended by the DJOD in 2013, until such time as he and Annie could "attend therapy together concerning their relationship issues." The parties were ordered to cooperate with Dr. Robert Rosenbaum, who was appointed to conduct the therapy and tasked with making a recommendation to the court about the resumption of parenting time. Defendant was to pay sixty percent of his fees and plaintiff, forty percent. Defendant also was to undergo a psychological assessment about his parenting skills and to provide that report to the court.

On July 2, 2014, after defendant provided the report—that favorably assessed his ability to parent the children—the trial court ordered that defendant could begin reunification therapy with Annie, directing that it start immediately. Plaintiff was ordered to cooperate and to facilitate the therapy sessions by making Annie available for therapy sessions and by providing her calendar to defendant so he could schedule appointments.

Dr. Rosenbaum appointed Ms. Christine Heer to conduct the therapy, but she withdrew from that appointment in September 2015, citing "insurmountable

concerns about communication patterns in this matter." She also noted that Annie was emotionally fragile. On October 7, 2016, the court ordered defendant to pay all of the reunification therapy cost, subject to reallocation after a plenary hearing. It also ordered that a therapist would be appointed from a list of three "acceptable" reunification therapists to "immediately start the reunification therapy" between defendant and Annie.

On February 3, 2017, Dr. Marcy Pasternak was appointed as the reunification therapist but she withdrew shortly after because, by then, the children lived in Massachusetts and it was "logistically impossible" for her to conduct therapy.[7] In March 2017, the court appointed Dr. Jonathan Wall. On April 20 and April 22, 2017, defendant had the only reunification sessions with Annie that are documented in the record before us. Other therapy sessions were court ordered for June 3, June 17, June 27, July 1 and the week of July 2, but did not occur.

On June 15, 2017, the court vacated the therapy sessions scheduled for June 27 and early July because defendant had scheduled them in conflict with plaintiff's pre-planned trip to China with Annie. The court ordered plaintiff to

---

[7] Plaintiff and the children moved to Massachusetts in September 2016 without obtaining permission from the court.

pay defendant $1000 for the sessions missed on June 3 and June 17, consisting largely of cancellation fees. It ordered plaintiff to pay for "intensive treatment" going forward because of her "history of interference with reunification therapy and her refusal to heed the [c]ourt's warnings about her continued interference with reunification therapy set forth in its April 2017 order." The court stated that plaintiff had "monopolized" the appointment on April 20 and her friend repeatedly interrupted the session on April 22. Citing a letter from Dr. Wall, the court stated that "it has been very difficult to schedule these re-unification therapy sessions and it has been extraordinarily difficult to . . . even move forward." By then, Dr. Wall had withdrawn from his appointment, but the court ordered that the "intensive re-unification therapy" would be undertaken by Drs. Marcy Pasternak and Sharon Ryan Montgomery beginning in August 2017 after "intake."

Plaintiff requested reconsideration of the June 15 order. On August 21, 2017, the court ruled that plaintiff's objection to Dr. Wall's involvement was denied as moot because he no longer was the therapist. Plaintiff objected to intensive therapy with Dr. Pasternak because she said it was for families involved in high conflict divorces and not appropriate for defendant who she referred to as an "abuser." Her request to reconsider Dr. Pasternak's appointment

A-2376-16T1

for intensive therapy was denied, however, because plaintiff had not provided the court with any facts to support the request for reconsideration.

On October 12, 2017, in response to a request by Dr. Pasternak for clarification of an order, the court directed that plaintiff would pay for the intensive treatment program, and that other family members shall be permitted to attend the sessions as the doctors deemed appropriate. The court's statement of reasons clarified that the parties would be given questionnaires to fill out for the doctors to determine whether the intensive therapy program was appropriate for them.

At the end of October 2017, the court conducted a hearing[8] where it made "findings of fact and conclusions of law regarding parental alienation and reunification therapy." The court found that plaintiff was not credible regarding her testimony about the sessions with Dr. Wall on April 20 and April 22, 2017. The court stated there were "continued disruptions, obstructions, objections and everything else that could be put in the way of that reunification therapy and, Ms. Ji, it falls at your feet." The court noted that when plaintiff first met with Dr. Wall, she wanted the doctor to write to the court to vacate all of the

---

[8] The parties have provided two transcripts: one for October 31, 2017, and another from November 2, 2017.

A-2376-16T1

reunification orders. The court found "there has been interference with this . . . reunification therapy in the past." Referring to plaintiff and her friend, the court found "as a fact that they engaged in a pattern of activities meant to specifically disrupt this reunification . . . process." However, defendant also was not blameless in the delay. The court noted that defendant "seem[ed] to have disappeared from this reunification therapy for substantial periods of time."

Following the hearing, the court ordered intensive therapy with Drs. Pasternak and Montgomery. The parties were ordered to attend on the dates selected by the doctors. The court threatened to impose sanctions for non-attendance. Plaintiff's friend was not to have any role in the process. No party was to videotape or record the sessions. None of the parties was to contact the doctors. The court stated there could be "major repercussions" for plaintiff if she interfered.

Dr. Pasternak wrote to the court for clarification. The court's December 4, 2017 order clarified that the parties were to comply with the intake process and that they were to follow the doctor's instructions to move forward with the intensive treatment program. (Pa106).

Plaintiff argues in A-4260-16 that neither the April 19, 2017 nor June 15, 2017 orders should have been entered because nothing was emergent about the

scheduling of the therapy sessions. She contends the penalties set forth in the June 15, 2017 order were entered without due process and relied on hearsay. Plaintiff argues that the orders were entered without conducting a best interest analysis, appropriate fact-finding and violated due process.

In A-1800-17, plaintiff argues that the October 12, 2017 order, and subsequent orders regarding "intensive" reunification therapy, must be vacated because they were entered without a finding of changed circumstances, without consideration of the child's best interest and without appropriate fact-finding. She contends that the orders require new parties to participate in court-ordered therapy. We reject these arguments.

II

We accord "great deference to discretionary decisions of Family Part judges," Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012), in recognition of the "family courts' special jurisdiction and expertise in family matters." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). This deference is grounded in the understanding that trial judges are in the best position to hear and see witnesses and to get a feel for the case, which a reviewing court cannot do. See State v. Watts, 223 N.J. 503, 516 (2015); see also State v. Nash, 212

N.J. 518, 540 (2013). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Hitesman v. Bridgeway, Inc., 218 N.J. 8, 26 (2014) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The therapy sessions from April, June and July 2017 that plaintiff challenged as not being emergent are long since passed. It is moot whether the necessity for therapy on those dates was emergent. We conclude that plaintiff's arguments on this point are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Plaintiff contends the court did not make findings of fact or conclusions of law as required by Rule 1:7-4. The record belies this. In November 2017, the court made factual findings that plaintiff obstructed and interfered with the reunification. She was found not to be credible in her testimony about the only two therapy sessions that occurred in five years. We afford great deference to those findings because the trial court had the opportunity to conduct a hearing and hear and see witnesses. See Nash, 212 N.J. at 540 ("An appellate court's reading of a cold record is a pale substitute for a trial judge's assessment of credibility of a witness he has observed firsthand."). We are satisfied that there

was adequate, substantial, and credible evidence in the record for these findings, and the findings in other orders that she obstructed the process. Watts, 223 N.J. at 516; Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015).

The decisions to impose sanctions for this obstruction were an appropriate means to enforce plaintiff's compliance with the court's orders. A court may impose sanctions as a coercive measure to effectuate the enforcement of a prior order. R. 1:10-3. Monetary sanctions are a "proper tool to compel compliance with a court order." Ridley v. Dennison, 298 N.J. Super. 373, 381 (App. Div. 1997). A Family Part judge may order "economic sanctions, including but not limited to the award of monetary compensation for the costs resulting from a parent's failure to appear for scheduled parenting time or visitation such as child care expenses incurred by the other parent." R. 5:3-7(a)(2).

In this case, plaintiff was ordered to pay for reunification therapy and was required to pay a modest sanction for missed sessions. Her finances already were thoroughly established in the divorce trial with which the trial court was familiar and relied upon. We discern no abuse of discretion by the court in the steps taken to implement reunification therapy or the sanctions imposed.

Plaintiff argued that the "intensive" therapy with Drs. Pasternak and Montgomery was not reunification therapy, and that it required a showing of

11

changed circumstances and an analysis of the child's best interest before it could be ordered. However, the orders make clear that the "intensive" therapy was part of the ongoing efforts to implement reunification. After years of failed efforts, with one false start, it was entirely reasonable, and not an abuse of any discretion, to implement an intensive program with plaintiff as a participant, because she was found to have obstructed reunification efforts. Plaintiff did not show any change of circumstances; she did not satisfy the court that therapy should not be implemented. In fact, plaintiff objected to the intake process where the therapists could determine what was best, who could be involved or even whether to proceed with the program.

Plaintiff contends in A-1800-17 that the proposed intensive therapy was not tailored to the child's needs. However, she frustrated the process of determining that, by not participating in the intake process as the court had ordered. Plaintiff was incorrect that other family members were ordered to participate; the order provided that they were not precluded from participating if the therapist permitted that. There also was no indication the intensive reunification therapy was being used as a sanction. Plaintiff presented no evidence of this.

Plaintiff contends the June 15, 2017[9] order was entered without due process, and she appeals the denial in August 2017 of her motion for reconsideration. A trial court's reconsideration decision will not be disturbed "unless it represents a clear abuse of discretion." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (citing Housing Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994)). Reconsideration is only appropriate in circumstances where: "1) the [c]ourt has expressed its decision based on a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990). We agree with the trial court that plaintiff did not present any evidence that was new or that the court did not consider. She did not show that the court's decision was made on an irrational basis. She was not denied due process because she had ample opportunity to express her concerns about the June 15, 2017 order.

_____

[9] The June 15, 2017 order was not included in plaintiff's September 27, 2017 notice of appeal; it is not properly before us. If it were, we would reject plaintiff's argument that it was entered improperly. The court found that plaintiff interfered with reunification. There was authority to sanction her for that interference.

After carefully reviewing the record and the applicable legal principles, we conclude that plaintiff's arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

III

In A-2376-16, plaintiff appeals portions of an order entered on October 7, 2016,[10] and portions of another order entered on February 3, 2017.[11] She appealed the October 7, 2016 order on February 13, 2017, which was more than forty-five days after its entry. Her appeal of this order was filed out of time. See R. 2:4-1(a). As such, we decline to consider her appeal of any part of that order.

Plaintiff also appealed the February 3, 2017 order. Paragraph 1 denied plaintiff's motion to reconsider various paragraphs of the October 7, 2016 order. Paragraph 2—also part of her motion for reconsideration—denied her request to enforce paragraph 32 of the October 7, 2016 order.

---

[10] In the October 7, 2016 order, plaintiff appeals paragraphs 1, 12, 13, 17b, 23, 27, 29, 34, 35, 43, 62, 69, 71, 72, 73, 74 and 75.

[11] The portions of the February 3, 2017 order that were appealed include paragraph 1, 2, 6a, 14 and 15.

Plaintiff's appendix filed with her brief included a copy of the court's February 3, 2017 order, but it did not include the judge's lengthy statement of reasons in support of that order.[12] Plaintiff also failed to include a copy of her motion for reconsideration or to identify what exhibits she submitted with that motion. She did not include a copy of the opposition that was filed. Instead, plaintiff included copies of motions and cross-motions that were decided by the October 7, 2016 order.

Because she failed to include documents crucial for the court's review, we cannot address the issues in this appeal[13] that relate to her motion for reconsideration. See Cipala v. Lincoln Tech. Inst., 179 N.J. 45, 55 (2004) (refusing to address issues on appeal where plaintiff failed to submit the relevant final order); Soc'y Hill Condo. Ass'n, Inc. v. Soc'y Hill Assocs., 347 N.J. Super. 163, 177 (App. Div. 2002) (explaining that a party's failure to include documents which are essential to proper consideration of the issues on appeal "render[ed] review impossible"); Newman v. Isuzu Motors Am., Inc., 367 N.J. Super. 141, 145 (App. Div. 2004) (finding plaintiff to have violated Rules 2:6-1(a) and 2:5-3(b) for failing to include the motion papers or transcript of the hearing on the

---

[12] She included it in the appendix of A-4260-16.

[13] We are referencing paragraphs 1 and 2 of the February 3, 2017 order.

motion below). Accordingly, we dismiss her appeal of paragraphs 1 and 2 of the February 3, 2017 order.

After the divorce, plaintiff relocated to Massachusetts with the children. In the October 7, 2016 order, the court ordered a plenary hearing to address the issues that were raised by her relocation. Paragraph 6a of the February 3, 2017 order, which is part of the current appeal, required plaintiff to be solely responsible to transport May to and from New Jersey for defendant's parenting time. Because paragraph 6a of the February 3, 2017 order was entered prior to the plenary hearing, plaintiff's appeal of paragraph 6a was interlocutory.[14] Plaintiff did not request, nor was she granted, leave to appeal this issue. We dismiss plaintiff's appeal of paragraph 6a of the February 3, 2017 order as interlocutory.

Plaintiff's notice of appeal included paragraphs 14 and 15 of the February 3, 2017 order. Paragraph 14 was a discovery order that granted defendant's request to require plaintiff to provide information in thirty days about investment accounts that were set up for both children. Paragraph 15 ordered a

---

[14] In another appeal filed by defendant, A-1141-16, we found that much of the October 7, 2016 order was interlocutory in nature because of the pending plenary hearing. In an order dated January 30, 2017, we concluded that only paragraphs 10, 16, 17 and 67 of the October 7, 2016 order were "final" for purposes of appeal.

$500 per day sanction if plaintiff did not comply. Because plaintiff's brief did not address either of these paragraphs, she waived her appeal of them and we dismiss this part of her appeal. See Drinker Biddle v. N.J. Dep't of Law & Pub. Safety, Div. of Law, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011) (noting that claims not addressed in merits brief are deemed abandoned); see also Gormley v. Wood-El, 218 N.J. 72, 95 n.8 (2014); Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2019). In light of our opinion herein, we dismiss appeal A-2376-16.

Dismissed in part and affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION