**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2247-23

AJIT DALAL,

    Plaintiff-Appellant,

v.

ASHWINI DALAL,

    Defendant-Respondent.

_____

Submitted April 8, 2025 – Decided August 22, 2025

Before Judges Firko and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-1279-19.

Ajit Dalal, appellant pro se.

Respondent has not filed a brief.

PER CURIAM

In this post-judgment matrimonial matter, plaintiff Ajit Dalal appeals from the Family Part's March 14, 2024 order denying without prejudice, in part,

and granting, in part, his motion to enforce litigant's rights. Plaintiff appeals from the provision of the order granting his request to have once-daily, fifteen-minute telephone or video call communication with the minor child "if he purchase[d] a cell phone for the child for that purpose."

Plaintiff also appeals from the provisions of the order denying without prejudice his request (1) to allow him to travel with the parties' minor child to India on vacation or in the case of emergency; (2) to require that defendant may only take the parties' minor child out of the country only with plaintiff's written consent; (3) to require both parties to attend mediation with the designated mediator to address "all outstanding issues, including but not limited to, citizenship, documentation, and extracurricular activities for the minor child," and to equally share the cost of mediation; (4) to compel plaintiff to cooperate with the execution of the minor child's renunciation of citizenship from India, the United States (U.S.) Certificate of Citizenship, and the Overseas Citizen of India (OCI) card;[1] and (5) for an order prohibiting defendant from demanding

---

[1] The Constitution of India prohibits dual citizenship with a foreign country. Instead, the Overseas Citizen of India Scheme allows persons of Indian [o]rigin who migrated from India and acquired citizenship of a foreign country other than Pakistan, Bangladesh or such other country as the Central Government may, by notification in the Official Gazette, may specify, to obtain an eligible for the OCI. A registered OCI is a multiple entry, multipurpose, life-long visa

reimbursement from plaintiff for the child's U.S. passport, OCI, Indian visa, and extracurricular activities for which he has not agreed. For the reasons that follow, we affirm.

## I.

We derive the following facts and procedural history from the motion record. The parties were married for eight years. In August 2012, the parties' daughter was born in India. In 2019, the parties were divorced by a dual final judgment of divorce (DFJOD), which incorporated their marital settlement agreement (MSA). The MSA provided the parties would share joint custody of the minor child and designated defendant as the parent of primary residence. The MSA also set forth a parenting and holiday schedule, which was reviewed and initialed by the parties. Although the MSA does not explicitly address the

---

for visiting India and the registered holder is exempted from registration with Foreign Regional Registration Officer or Foreign Registration Officer for any length of stay in India. Both parents' signatures are required for an OCI application. Consular Services Overseas Citizen of India Consular Scheme, https://www.mea.gov.in/overseas-citizenship-of-india-scheme (last visited August 11, 2025).

The OCI card is obtained after a Renunciation/Surrender Certificate is issued by the Indian government when a person renounces their Indian citizenship after acquiring citizenship of another country. In the case of minors, both parents' signatures are required. Surrender of Indian Passport, https://www.vfsglobal.com/one-pager/india/united-states-of-america/renunciation-of-indian-citizenship/ (last visited August 11, 2025).

issue of travel notification and consent, it provides a handwritten notation initialized by both parties, which states: "The [w]ife shall hold the passport and green [ ] card[.] [H]owever, she shall provide both to [h]usband upon request, one week prior to travel. The [h]usband shall return the originals to the [w]ife." Under the MSA, the parties also agreed that they would first attempt to resolve any disputes "concerning any aspect of [the MSA]" between themselves. In the event the parties were unable to reach a resolution, they agreed to engage in mediation as per the terms of the MSA.

On January 15, 2021, the parties modified the MSA by consent order (2021 Consent Order). Relevant to this appeal, the 2021 Consent Order provided that the costs of the minor child's summer camp, dance, swimming, and either piano or art extracurricular activities would be shared by the parties in proportion to their respective incomes. Defendant agreed to provide plaintiff with receipts for the extracurricular activities in order to receive reimbursement. All other provisions of the MSA remained in effect. On June 7, 2021, an order was entered modifying child support pursuant to the 2021 Consent Order.

In 2022 and 2023, the parties disagreed regarding the implementation of the MSA and 2021 Consent Order concerning the minor child's travel and citizenship documents. In early October 2023, defendant suggested the parties

engage in mediation to resolve their disputed issues. Plaintiff alleged that defendant acted in bad faith under both the MSA and 2021 Consent Order.

In October 2023, the parties exchanged emails regarding the documents required to obtain the child's U.S. passport, renunciation of Indian citizenship, and OCI, which required both parents' signatures.[2] Defendant requested additional information from plaintiff to complete the U.S. passport application. Defendant also informed plaintiff that both parents were required to sign the parental authorization form and sworn affidavit for the OCI and renunciation cards. Defendant told plaintiff that the application fees had been paid and the pending filing deadline for the application. Plaintiff, however, repeatedly asked for copies of the documents and the minor child's passport, although no U.S. passport or OCI card had been issued. Nor does the record reveal plaintiff signed the renunciation document.

During that same month, defendant requested plaintiff's signature for the minor child's Indian visa. On October 19, 2023, defendant notified plaintiff that

---

[2] For a child to receive a U.S. passport, both parents are required to sign the DS-11 application, show their relationship to the child, and be present with the child when applying. If the parent cannot be present, a notarized and signed Statement of Consent must be submitted. U.S. Dep't of State, Apply for a Child's Passport Under [Sixteen], https://travel.state.gov/content/travel/en/passports/need-passport/under-16.html (last visited July 30, 2025); 22 C.F.R. § 51.28(a)(2).

she needed to travel to India due to a family emergency, as her mother was in "critical" condition. Plaintiff acknowledged defendant's email and responded: "[T]ake care." He also demanded that defendant provide a copy of the minor child's passport before he signed her visa application.

Shortly thereafter, on October 28, plaintiff traveled to India due to an emergent medical procedure performed on his father. In an email, plaintiff told defendant that he would not be picking up the minor child for a "couple of weeks."

Defendant left for India on November 3 and returned to the U.S. on November 26. While defendant was in India, plaintiff asserts he received an email on November 25 from the minor child's school nurse regarding the minor child being "out of [the]country." Plaintiff emailed defendant asking if she and the minor child were in India. If so, plaintiff requested that defendant take the minor child to see his father while he could still recognize her. Plaintiff further stated that if no response was received, he would file a complaint with the police. Defendant stated that she messaged plaintiff through WhatsApp, a social media, instant messaging, and voice-over-internet protocol service.

Plaintiff contends that he received no response, and the day after he returned from India, he went to the police station. He also sent a text to

defendant again asking about the minor child's whereabouts. On November 27, defendant responded and confirmed the minor child was in school. Plaintiff replied, alleging defendant took the child to Disney without his consent and in violation of the MSA.

On Christmas Day, plaintiff sent an email to defendant again addressing the minor child's numerous absences from school in November. He sent a subsequent email to defendant, threatening court intervention, and alleging that defendant violated the MSA by interfering with his parenting time. Specifically, plaintiff claimed defendant did not allow plaintiff to speak with their minor child for over a year and traveled abroad with the minor child without his consent.

In early January 2024, defendant emailed plaintiff regarding his contribution toward the minor child's extracurricular activities and medical expenses, as required by the 2021 Consent Order. Defendant also sought reimbursement for expenses related to the minor child's U.S. citizen certificate, Indian passport renewal and U.S. passport fees. Defendant also requested that plaintiff provide a copy of his W-2 and attached receipts in accordance with the MSA. Shortly thereafter, defendant's counsel notified plaintiff that he was in violation of the MSA and obligated to mediate disputes concerning any aspect of the MSA.

A-2247-23

In February 2024, plaintiff moved to modify the child custody designation and sought primary custody of the minor child. He also sought a modification (1) of parenting time by requiring defendant to obtain written consent to travel with the child outside of the United States; (2) to cease reimbursement for the child's extracurricular activities; (3) obtain all the minor child's travel documents; and (4) to not engage in mediation.

Defendant opposed the motion and cross-moved to (1) deny plaintiff's motion in its entirety; (2) compel mediation; (3) compel plaintiff's cooperation with defendant in obtaining the minor child's renunciation, U.S. passport, and OCI card; (4) update the minor child's probation account to reflect no payment is owed by defendant; and (5) attorney's fees and costs.

In reply to defendant's cross-motion, plaintiff sought additional relief. He requested that defendant pay for mediation and asserted that he should not be required to share in the costs for the minor child's citizenship documents or extracurricular activities. On March 14, 2024, the Family Part judge granted, in part, and denied, in part, plaintiff's motion. The judge likewise granted, in part, and denied, in part, defendant's cross-motion.

A-2247-23

## II.

On appeal, plaintiff essentially reprises the arguments presented before the Family Part judge. Defendant argues that the judge erred in requiring him to purchase a cell phone to communicate with the minor child and mandates that he pays for the recurring costs, which "ignores" the MSA and the joint custody rights. Plaintiff next argues the judge misinterpreted his requested relief: (1) to travel to India with the minor child during vacations or emergencies; and (2) to direct defendant to inform him and obtain his consent before traveling with their minor child. He contends the issue is his inability to access the minor child's U.S. passport and obtain copies of the passport because the passport application has been completed. Accordingly, plaintiff argues the judge failed to uphold the joint custody principle and the MSA, which warrants reversal.

Plaintiff also contends that the March 14, 2024 order fails to enforce the parties' agreements and the issues previously addressed during mediation. Lastly, he argues the order is deficient because it fails to address the issues of statute of limitations, waiver, and estoppel; compelling plaintiff to either share costs for the minor child's passport, U.S. citizenship certification, OCI, and renunciation or mediation.

A-2247-23

Our review of a Family Part judge's findings is limited.  Gormley v. Gormley, 462 N.J. Super. 433, 442 (App. Div. 2019).  We "afford substantial deference to the Family Part's findings of fact because of that court's special expertise in family matters."  W.M. v. D.G., 467 N.J. Super. 216, 229 (App. Div. 2021) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)).  "Under that deferential standard of review, we are bound to uphold a finding that is supported by sufficient credible evidence in the record."  Moynihan v. Lynch, 250 N.J. 60, 90 (2022).

An order to enforce litigant's rights under Rule 1:10-3 is reviewed for abuse of discretion.  Wear v. Selective Ins. Co., 455 N.J. Super. 440, 458-59 (App. Div. 2018) (citing Barr v. Barr, 418 N.J. Super. 18, 46 (App. Div. 2011)).  "We will reverse only if we find the judge clearly abused his or her discretion[.]"  Clark v. Clark, 429 N.J. Super. 61, 72 (App. Div. 2012).  We review issues of law de novo, including issues arising in a custody dispute.  R.K. v. F.K., 437 N.J. Super. 58, 61 (App. Div. 2014).

Matrimonial agreements "are essentially consensual and voluntary in character and therefore entitled to considerable weight with respect to their validity and enforceability notwithstanding the fact that such an agreement has been incorporated in a judgment of divorce."  Bermeo v. Bermeo, 457 N.J.

Super. 77, 83 (App. Div. 2018) (quoting Petersen v. Petersen, 85 N.J. 638, 642 (1981)). "It is not the function of the court to rewrite or revise an agreement when the intent of the parties is clear." Quinn v. Quinn, 225 N.J. 34, 45 (2016) (citing J.B. v. W.B., 215 N.J. 305, 326 (2013)). "Accordingly, MSAs should be enforced so long as they are consensual, voluntary, conscionable, and not the result of fraud or overreaching." Satz v. Satz, 476 N.J. Super. 536, 551 (App. Div. 2023).

We first address plaintiff's argument that the judge erred in finding that he requested a modification of his parenting time or schedule when he sought enforcement of his once-daily, fifteen-minute telephone or video call with the child. The record does not support plaintiff's argument.

In plaintiff's initial motion, he sought a change in the primary custody designation of the child. If granted, he also proposed modifying visitation to permit defendant to have overnights visits one or two nights per week. To modify an order establishing custody or parenting time, whether temporary or permanent, a party must first demonstrate there has been a change in circumstances and that change is in the child's best interest to modify the arrangement. R.K., 437 N.J. Super. at 62; Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007). An existing custody order is presumed to "'embod[y] a

11

A-2247-23

best interests determination' and should be modified only where there is a 'showing [of] changed circumstances which would affect the welfare of the children.'" A.J. v. R.J., 461 N.J. Super. 173, 182 (App. Div. 2019) (second alteration in original) (quoting Todd v. Sheridan, 268 N.J. Super. 387, 398 (App. Div. 1993)).

Here, plaintiff mischaracterizes the record. In his application, plaintiff checked the boxes indicating that he was seeking a change in both custody and parenting time. However, plaintiff failed to demonstrate a change in circumstances sufficient to warrant modification from defendant to plaintiff as the parent of primary custody.

The record reflects that plaintiff's request for relief was based upon the provision of the MSA allowing for a fifteen-minute telephone or video call with the minor child to be made once daily between 7:00 p.m. and 8:00 p.m. Additionally, plaintiff's application was primarily predicated on the acrimonious relationship between the parties. The record further supports the Family Part judge's findings that "neither party needs to serve as a conduit for a daily telephone [call] of [fifteen] minutes between the [minor] child and the parent not exercising parenting time."

Plaintiff also misconstrues the provision of the order, which grants him the option to purchase a cell phone should he wish to communicate with his minor child once daily for fifteen minutes. Given the contentious nature of the parties' co-parenting relationship, we discern no misapplication of the law or abuse of discretion by the judge in crafting a remedy that serves the best interest of the minor child. Specifically, the judge appropriately provided plaintiff with the option to purchase a cell phone for the minor child if he wishes to facilitate a once-daily, fifteen-minute call. Beck v. Beck, 86, N.J. 480, 486 (1981).

We likewise reject plaintiff's argument that he was obligated to pay the monthly cell phone costs. Simply put, plaintiff has misread the judge's order. The provision does not explicitly provide that plaintiff bears the sole responsibility for the recurring costs of the cell phone. We conclude that the judge properly determined that any expenses related to the cell phone should be addressed through mediation in accordance with the MSA.

On appeal, plaintiff argues the judge erred in denying his request regarding traveling with the minor child to India during her vacation or in case of emergency and requiring defendant to obtain his written consent to travel with the child out of the country. Plaintiff's argument lacks merit.

13

We find no basis in the record to disturb the court's decision to refer the travel issues with the child to mediation. While the MSA outlines the vacation and parenting time schedule, it does not specifically address the requirements for notifying the other parent about travel or obtaining consent from the other parent not exercising parenting time. Nevertheless, this issue should be addressed in mediation to "preserve the decision-making roles of both parents" with joint legal custody. Costa v. Costa, 440 N.J. Super. 1, 6 (App. Div. 2015) (quoting Beck, 86 N.J. at 500).

We are also convinced the judge properly exercised his discretion in directing plaintiff to cooperate with defendant to execute the minor child's citizenship documents. Contrary to plaintiff's assertion, the record does not reveal the child's citizenship documents have been completed. Furthermore, both the United States and India require both parents to sign an application for issuance of U.S. citizenship documents, OCI, and renunciation. In other words, the order directs plaintiff to comply with the applicable law.

Finally, we reject plaintiff's argument that the judge erroneously ruled the shared costs for the minor child's citizenship's documents and extracurricular activities reimbursement were subject to mediation, as it is beyond the parameters of the MSA. The judge correctly determined the parties' MSA

14

required them to first attempt mediation if they were unable to resolve any disputes regarding MSA on their own. We are satisfied that he properly interpreted the MSA in the context of the parties' disputed issues. There is no evidence in the record to support plaintiff's argument that the issues had been fully agreed upon by the parties and mediation was not required. Therefore, plaintiff's request to deny mediation for the child's travel documents costs and extracurricular activities reimbursement was properly denied.

Having reviewed the record, we discern no abuse of discretion in enforcing the parties' MSA and 2021 Consent Order. To the extent we have not addressed any arguments raised by plaintiff, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

15